IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **ESTER DAVIS,** | ) | |
| | ) | |
| *Plaintiff*, | ) | **09 CV 939** |
| v. | ) | |
| | ) | |
| **Chicago Heights Police Officers RYAN FENIMORE #157, ANTHONY BRUNO #144, BENJAMIN NGUYEN #112, GREGORY STEPICH #123, and the CITY OF CHICAGO HEIGHTS,** | ) | **Honorable David H. Coar** |
| | ) | |
| *Defendants*. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before this Court is an action filed by Plaintiff Ester Davis ("Davis") against Defendants Ryan Fenimore ("Fenimore"), Anthony Bruno ("Bruno"), Benjamin Nguyen ("Nguyen"), Gregory Stepich ("Stepich") (collectively the "individual defendants" or "Defendants"), and the City of Chicago Heights for civil rights violations pursuant to 42 U.S.C. §1983 and a state law claim for malicious prosecution. Nguyen and Bruno seek summary judgment in their favor on Count I (Excessive Force and/or Failure to Intervene); Fenimore, Bruno, and Nguyen seek summary judgment on Count II (False Arrest); and all individual defendants seek summary judgment on Count III (Malicious Prosecution). For the reasons stated below, Defendants' motions for summary judgment are GRANTED in part and DENIED in part.

1

# FACTS

On February 17, 2007, Davis and his cousin, Herman Woods, was operating a vehicle in Chicago Heights, Illinois, with a cracked windshield and tinted passenger and driver side windows. (Fenimore, Stepich, and Nguyen's Rule 56.1 Statement of Material Facts ("Def. SOF") ¶ 7; Plaintiff's Rule 56.1 Statement of Material Facts ("Pl. SOF") ¶ 1.) Officers Fenimore, Bruno, Stepich, and Nguyen, upon observing the cracked windshield and tinted windows, stopped Davis. (Def. SOF ¶ 8.) After approaching the car, Fenimore stated that he detected the smell of cannabis and/or marijuana coming from the vehicle. (Def. SOF ¶ 13.) Fenimore directed Davis to put down the camcorder he was holding and exit the vehicle. (Def. SOF ¶ 15, 16.) Davis was eventually placed in handcuffs. (Def. SOF ¶ 17.)

The events preceding Davis' handcuffing are the subject of significant dispute. The police officers claim that Davis opened the door, pushed Fenimore, and resisted arrest. (Def. Resp., Pl. SOF ¶ 13.) Davis maintains that Fenimore opened the car door, dragged Davis out, and twisted his body so that he was facing the vehicle. (Pl. SOF 13, 15.) Davis further alleges that Bruno and Stepich held down his wrists while Fenimore suddenly punched him in the face two or three times, then grabbed the back of his head and slammed it into the car. (Pl. SOF 18, 19.) Nguyen stood about five or six feet away as Fenimore struck Davis. (Pl. SOF ¶ 20.)

During this exchange, Davis sustained a laceration to the middle of his forehead, leaving a permanent scar. (Pl. SOF ¶ 23.) Bruno and Stepich transported Davis to St. James Hospital to receive medical treatment. (Def. SOF ¶ 19.) Davis' injury required eleven stitches. (Pl. SOF ¶ 23.) Afterwards, Davis was taken to the Chicago Heights Police Station. (Bruno's Rule 56.1 Statement of Material Facts ("Bruno SOF") ¶ 44.)

Following his arrest, Fenimore lodged criminal complaints against Davis for assault and battery, resisting arrest, and driving under the influence. (Def. SOF ¶ 25, 29.) Davis was also issued traffic citations for operating a motor vehicle with tinted windows and a defective windshield. (Def. SOF ¶ 31.) The state's attorney *nolle prossed* the driving under the influence charge, and dismissed the assault charge and the traffic citations. (Pl. SOF ¶ 37.) Fenimore, Bruno, and Stepich testified at Davis' criminal trial. (Pl. SOF ¶ 39.) On July 22, 2009, following a jury trial, Davis was acquitted of the remaining charges. (Pl. SOF ¶ 40.)

**LEGAL STANDARD**

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts (a "scintilla of evidence" is insufficient) demonstrating that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 252.

When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003). At summary judgment, the "court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a

genuine issue of triable fact." *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

## ANALYSIS

**I. Count I: Excessive Force and/or Failure to Intervene**

**A. Failure to Intervene (Nguyen and Bruno)**

An officer who fails to intervene in the unconstitutional misconduct of other law enforcement officers is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring. *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir. 1997) (quotation marks omitted). "Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Id.* at 478 (citing *Anderson v. Branen,* 17 F.3d 552, 556 (2d Cir. 1994)). Nguyen and Bruno argue that they are entitled to summary judgment on Count I because a reasonable juror could not possibly conclude that they had a realistic opportunity to prevent Fenimore from harming Davis.

According to Davis' deposition testimony, Fenimore punched him in the face two to three times, then grabbed the back of his head and slammed it against the vehicle. (Davis Dep. 65:16-66:19.) Fenimore acted suddenly, such that the injuries were incurred in a "matter of seconds." (Davis Dep. 65:16-67:9.) Nguyen argues that, being approximately five to six feet away, it

would have been impossible to physically interfere with Fenimore's actions during the limited time it took to accomplish the harm. Bruno similarly argues that he lacked a realistic opportunity to intervene, given the suddenness and rapidity of Fenimore's movements.

A reasonable juror could find that a person could close a distance of five or six feet (in Nguyen's case) or a few inches (in Bruno's case) within the time it took for Fenimore to accomplish at least some of his ends. Such minimal distances can be traversed in approximately a second or less. Punching a person two to three times, then grabbing the back of his head and slamming his face against a car may take up to three seconds or more. Even if Nguyen and Bruno could not physically come between Fenimore and Davis, they could have at least told Fenimore to stop. *See Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (finding sufficient facts to justify failure to intervene action where defendant "could have called for a backup, called for help, or at least cautioned [malfeasant officer] to stop."). Davis also argues that Fenimore applied excessive force when initially dragging Davis from the driver's seat. Although the point is moot in light of the co-defendants' opportunity to halt the beating, it bears noting that Nguyen and Bruno never address their failure to intervene in that action, or whether the dragging could violate Davis' constitutional rights in the first place.

The speed at which the disputed events actually occurred, and the resulting reasonableness of Nguyen's and Bruno's responses, are issues for a jury to decide. All the Court concludes today is that intervention on the part of Nguyen and Bruno was not an impossibility, given the facts alleged by Davis.[1] Nguyen's and Bruno's requests for summary judgment on

---

[1] All told, Fenimore struck Davis approximately three times in succession, within close proximity of Bruno and Nguyen. The cases cited by Defendants can thus be distinguished on the facts. *See, e.g.*, *Lanigan*, 110 F.3d at 478 (finding that, where alleged excessive use of force was a single poke and a push, police chief could not realistically throw himself between an officer's finger and plaintiff's body); *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988) (finding officer not liable for failing to prevent three blows struck in rapid succession, without a discussion as to the distance between the defendant officer and the plaintiff); *Smith v. Boyle*, No. 02 C 2788, 2004 WL 2203438,

5

Davis' failure to intervene claim are denied.

Bruno moves for summary judgment on the additional ground that he is entitled to qualified immunity. When examining a qualified immunity defense, the Court must consider whether a constitutional right has been violated, and whether that right was sufficiently well established that a reasonable officer would have been aware of it. *Narducci v. Moore*, 572 F.3d 313, 318 (2001). Essentially, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz,* 533 U.S. 194, 202 (2001). Bruno argues that he is entitled to qualified immunity because it is not clear that the act of grabbing and holding someone's wrist is unconstitutional.

Yet, after construing the disputed facts in the light most favorable to Davis, Bruno's conduct can more accurately be described as pinning an unresisting suspect down while a fellow officer punches him and slams his head against a car. Conduct resembling Fenimore's has long been recognized as excessive use of force in far more provocative circumstances. *See, e.g.*, *Stachniak v. Hayes*, 989 F.2d 914 (7th Cir. 1993) (affirming jury verdict finding officers liable for excessive use of force where officers punched, kicked, and choked plaintiff, even where plaintiff head-butted and choked officers while resisting arrest); *O'Leary v. Luongo*, 692 F.Supp. 893, 897, 903-04 (N.D.Ill. 1988) (denying summary judgment on excessive force claim where officers slammed plaintiff's head into a car and repeatedly kicked and punched him, despite plaintiff's conviction for resisting that arrest); *Yang*, 37 F.3d at 285 (citing cases in other circuits). Moreover, it is clearly established that failing to intervene when a fellow officer applies excessive force during an arrest is a violation of civil rights.[2] *See Lanigan*, 110 F.3d at

---

at *3 (N.D. Ill. Sept. 29, 2004) (finding that, where alleged excessive use of force was one blow to a prisoner, officers six to ten feet away could not realistically intervene).

[2] As explained above, the Court cannot discount the possibility that Bruno could have realistically intervened in Fenimore's alleged misconduct.

477; *Yang*, 37 F.3d at 285. A reasonable officer in Bruno's position would know that it is unlawful to stand by while another officer repeatedly punches a suspect, particularly where the suspect is being restrained by the inactive officer. As such, Bruno is not entitled to qualified immunity.

### B. Excessive Force (Bruno)

Bruno further requests summary judgment on Davis' excessive force claim against him. Count I alleges that Defendants used excessive force in "physically striking plaintiff, threatening him with a gun, [and] physically restraining him without justifiable cause." (Compl. ¶ 25.) According to Davis' testimony, Bruno's only contact with Davis came while physically restraining him when Fenimore struck. Bruno does not dispute the relevant events as described by Davis during his deposition. (Bruno SOF ¶ 32-37.) Meanwhile, Davis only disputes Bruno's characterization of Davis' testimony on matters of timing. (Pl. SOF ¶ 15, 21.) Bruno argues that Davis' excessive force claim must fail because, at most, Bruno only grabbed and held Davis' left wrist during the arrest, and such an act cannot constitute excessive force. (Bruno Br. at 10; Bruno SOF ¶ 32-33.)

Granted, holding a suspect's wrists to effectuate a routine handcuffing does not appear excessive. Yet, when the facts are construed in Davis' favor, a reasonable juror could conclude that Bruno and Stepich held Davis' arms down to facilitate Fenimore's beating. That Davis did not specifically allege as much during his deposition is irrelevant; Davis had no way of objectively divining Bruno's intent, given his position. A jury, however, is entitled to make such a judgment call on the facts. Given the above, the Court cannot conclude that, as a matter of law,

7

Bruno's grabbing and holding of Davis' wrists does not constitute excessive force. Bruno's motion for summary judgment on Count I is therefore denied.

## II. Count II: False Arrest

The presence of probable cause bars a false arrest claim under § 1983. *See Ochana v. Flores*, 347 F.3d 266, 271 (7th Cir. 2003). With probable cause, a police officer may lawfully arrest an individual for even minor traffic violations. *Ochana*, 347 F.3d at 271 (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, (2001)); *Williams v. Rodriguez*, 509 F.3d 392, 399-400 (7th Cir. 2007). Defendants had probable cause to arrest Davis because he was operating a motor vehicle with a cracked windshield and tinted driver and driver side passenger windows. (Def. SOF ¶ 7.) Doing so constitutes a violation of the Illinois Vehicle Code. *See People v. Ramsey*, 839 N.E.2d 1093, 1098 (Ill. App. Ct. 2005); 625 ILCS 5/12-503(e); 625 ILCS 5/12-503(a).

Davis does not contest that his false arrest claim fails as a matter of law. *See Atwater*, 532 U.S. at 354 (holding that the Fourth Amendment permits arrest where a police officer has probable cause to believe that an offender has committed a non-jailable traffic offense). The Court thus grants Defendants' motions for summary judgment on Count II.

## III. Count III: Malicious Prosecution

To prevail on a claim for malicious prosecution in Illinois, Davis must establish: (1) the commencement or continuance of a judicial proceeding by defendants; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages. *Johnson v. Saville*, 575 F.3d 656, 659 (7th Cir. 2009);

*Illinois Nurses Ass'n v. Board of Trustees*, 741 N.E.2d 1014, 1025 (Ill. App. Ct. 2000). "A defendant is considered to have commenced criminal proceedings if he initiated a criminal proceeding or his participation was of so active and positive a character as to amount to advice and cooperation." *Fabiano v. City of Palos Hills,* 784 N.E.2d 258, 270 (Ill. App. Ct. 2002) (citing *Denton v. Allstate Ins. Co.,* 504 N.E.2d 756 (Ill. App. Ct. 1986)) (internal quotation marks and brackets omitted). Police officers may be liable for malicious prosecution if they either signed a criminal complaint or "played a significant role in causing the prosecution of the plaintiff." *Frye v. O'Neill*, 520 N.E.2d 1233 (Ill. App. Ct. 1988). When arguing the latter, a plaintiff must show that the officer used improper influence on the prosecutor or made knowing misstatements to the prosecutor in order to secure prosecution. *See Reed v. City of Chicago,* 77 F.3d 1049, 1053 (7th Cir. 1996).

Davis contends that Defendants did not have probable cause to prosecute him for resisting arrest, assault and battery, and driving under the influence.[3] As the sole officer who filed these criminal charges, Fenimore is properly named in Davis' malicious prosecution claim. His request for summary judgment on Count III is therefore denied. Meanwhile, Nguyen denies personal liability because he did not contribute to the criminal trial in any way. Bruno and Stepich argue that their only involvement in Davis' judicial proceedings was in their capacity as trial witnesses. Police officers are granted absolute immunity from §1983 liability for testimony given at trial, even if their testimony amounts to perjury. *Briscoe v. LaHue*, 460 U.S. 325, 335-336 (1983); *Curtis v. Bembenek*, 48 F.3d 281, 284 (7th Cir. 1995). The Court addresses the defendants in turn.

---

[3] As previously explained, Defendants had probable cause to initiate a proceeding against Davis for having tinted windows and a cracked windshield. The existence of probable cause is an absolute bar to a malicious prosecution claim. *Porter v. City of Chicago*, 912 N.E.2d 1262, 1271 (Ill. App. Ct. 2009). Davis may bring such a claim on his other charges, though. *See Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 682-83 (7th Cir. 2007).

9

Although the parties dispute each other's characterization of Nguyen's deposition testimony, it is fairly straightforward. Nguyen did not participate in drafting or reviewing the criminal complaints against Davis. (Def. SOF ¶ 26-27; Nguyen Dep. 87:10-17, 89:23-90:5; Fenimore Dep. 255:9-19.) Nguyen never testified against Davis. (Def. SOF ¶ 28; Nguyen Dep. 99:15-18.) The only related reports filled out by Nguyen include a property inventory form and a notification of impoundment form. (Nguyen Dep. 94:4-98:16.) Nguyen also wrote Davis' name at the top of the alcohol influence report, but did not fill out any other information, much less any substantive details. (Nguyen Dep. 94:4-95:3.) The record contains no other evidence indicating that Nguyen used improper influence on, or made misstatements to, the state's attorney in order to secure the prosecution of Davis. Consequently, Nguyen's motion for summary judgment on Count III is granted.

Similarly, Stepich and Bruno took no part in drafting Fenimore's criminal complaints. (Def. SOF ¶ 27; Pl. SOF ¶ 27; Bruno SOF ¶ 46.) As with Nguyen, the Court finds no evidence of improper influence or knowing misstatements on the part of Stepich and Bruno. Davis emphatically argues that the two officers nevertheless contributed to the commencement of his criminal action because they may have participated in discussing or producing the incident report. Fenimore, who wrote the report, stated that he did not show it to any of the co-defendants. (Fenimore Dep. 255:9-19.) Bruno testified that, as team leader, he reviewed it to make sure that its contents were accurate to the best of his knowledge. (Bruno Dep. 93:3-94:16) Stepich could not recall if he had reviewed it. (Stepich Dep. 30:11-31:16; Fenimore Dep. 255:9-19.) Although it was generally his practice to review such reports, he doesn't do it all the time. (Stepich Dep. 8-11.)

While an incident report may be relied upon by a prosecutor when pursuing a criminal case, such a document does not by itself initiate judicial proceedings, as a criminal complaint does. *Cf. Porter v. City of Chicago*, 912 N.E. 2d 1262, 1273 (Ill. App. Ct. 2009) (holding that probable cause in a malicious prosecution action "has historically been determined by looking to what the defendants knew at the time of subscribing a criminal complaint," as opposed to the time of arrest). From the evidence, a reasonable juror could not find that either Bruno or Stepich played a significant role in commencing criminal proceedings against Davis. *See Lipscomb v. Knapp*, No. 07 C 5509, 2009 WL 3150745, at *11 (N.D. Ill. September 30, 2009) (holding that proofreading an arrest report is "just the paperwork, part and parcel to participating in the arrest" and not tantamount to playing a significant role in the prosecution); *Krischel v. Hennessy*, No. 05 C 6539, 2008 U.S. Dist. LEXIS 52906, at *28-29 (N.D. Ill. July 9, 2008) (finding unsupported speculation that "back at the station Defendants acted together and added . . . baseless charges in an attempt to cover up and justify their use of excessive force" insufficient to infer that non-complaining officers participated in plaintiff's prosecution).

Davis also makes much of the fact that Stepich, Bruno, and Fenimore met with the prosecutor to review the police reports prior to testifying. (Fenimore Dep. 258:8-18; Stepich Dep. 146:21-148:18; Bruno Dep. 99:11-101:19.) During these meetings, Stepich and Bruno failed to inform the prosecutor that the police reports were inaccurate and incomplete. (Stepich Dep. 147:24-148:5; Bruno Dep. 101:1-12.) Rather, Stepich confirmed that Davis resisted arrest. (Stepich Dep. 148:9-11.) Davis depicts this conduct as "suppressing material exculpatory information" and "fabricating evidence" to mislead the prosecutor, thereby continuing the criminal proceedings without probable cause. Davis also complains that Stepich and Bruno

continued the case by appearing in court to testify falsely against him, despite knowing that a case can be dismissed when witnesses do not come forth.[4]

Davis cites a line of cases stating, uncontroversially, that a person whose false information causes a prosecutor or prosecuting officer to initiate a criminal action is liable for malicious prosecution. *See, e.g.*, *Randall v. Lemke*, 726 N.E.2d 183, 185 (Ill. App. Ct. 2000) (holding that a person commences a prosecution when he knowingly gives false information to a police officer, who then swears out a complaint); *Fabiano*, 336 Ill.App.3d at 654 (recognizing potential liability for officers who allegedly pressured the state's attorney to bring charges, concealed or failed to reasonably investigate potentially exculpatory evidence, and attempted to coerce a witness to provide false testimony); *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988) (holding that a police officer who deliberately supplies misleading information influencing a prosecutor's decision to charge an individual is not immune from suit for malicious prosecution).

These cases do not stand for the proposition that a non-complaining police officer with no prosecutorial control continues a criminal action, for malicious prosecution purposes, by withholding exculpatory evidence, testifying falsely, or corroborating misleading information before a prosecutor once proceedings are underway.[5] To the contrary, Illinois authority states that, when examining whether a defendant has continued proceedings, "liability should be imposed where the defendant takes an 'active part in [the] prosecution after learning there is no probable cause for believing the accused guilty' and where [his] 'share in continuing the

---

[4] Such overt acts might support a claim of conspiracy to maliciously prosecute. Although Davis' brief implies that the officers worked in concert, he has not argued the existence of a conspiracy, nor did he plead a conspiracy claim in his amended complaint.

[5] While complaining witnesses are not absolutely immune from malicious prosecution suits at common law, Stepich and Bruno are not complaining witnesses. Fenimore is the only officer who played a role in initiating a criminal action against Davis. *See Cervantes v. Jones*, 188 F.3d 805, 809-10 (7th Cir. 1999); *Ienco v. City of Chicago*, 286 F.3d 994, 1000 n.9 (7th Cir. 2002) (recognizing the complaining witness exception as established in *Cervantes* after *Newsome v. McCabe*, 256 F.3d 747 (7th Cir.2001)).

prosecution [is] active, as by insisting upon or urging further prosecution.' " *Denton v. Allstate Ins. Co.*, 504 N.E.2d 756, 760, *appeal denied*, 511 N.E.2d 427 (1987) (quoting Restatement (Second) of Torts § 655, Comment C (1977)).

Section 655 of the Restatement (Second) of Torts, in describing the rule of liability for continuing criminal proceedings in malicious prosecution actions, provides:

> It is not enough that [the defendant] appears as a witness against the accused either under subpoena or voluntarily, and thereby aids in the prosecution of the charges which he knows to be groundless. His share in continuing the prosecution must be active, as by insisting upon or urging further prosecution. The fact that he initiated the proceedings does not make him liable under the rule stated in this Section merely because he intentionally refrains from informing a public prosecutor, into whose control the prosecution has passed, of subsequently discovered facts that clearly indicate the innocence of the accused, even though they have the effect of convincing him that this is the fact.[6]

Restatement (Second) of Torts § 655, Comment C (2009). The record contains nothing to suggest that Stepich or Bruno ever insisted upon or urged further prosecution. Nor can the evidence be reasonably interpreted to infer that they assumed roles in Davis' criminal case any more active than that of typical trial witnesses, who routinely discuss their anticipated testimony with prosecutors in preparation for taking the stand.

Without any indication that Stepich or Bruno encouraged or pressured the prosecutor to continue the proceedings, a reasonable juror could not find that their actions actively continued Davis' criminal case. *Cf. Adams v. Sussman*, 292 Ill.App.3d at 45 (where defendant company filed a criminal complaint against plaintiff, defendant's failure to later notify prosecutor that it would not testify against plaintiff did not affirmatively continue criminal proceedings because

---

[6] In the absence of case law bearing on matters of malicious prosecution, Illinois courts find persuasive the Restatement (Second) of Torts. *See Randall*, 726 N.E.2d at 185 (citing the Restatement in the absence of authority); *Pratt v. Kilborn Motors, Inc.,* 363 N.E.2d 452, 454 (1977) (same). Appellate courts have adopted this comment in particular. *See Adams v. Sussman & Hertzberg*, *Ltd*., 292 Ill.App.3d 30, 44-45 (Ill. App. Ct. 1997); *Denton*, 504 N.E.2d at 760.

13

"the ultimate decision on whether to continue to prosecute the plaintiff would have been with the State's Attorney"); *People v. Eisele,* 396 N.E.2d 662, 664-65 (Ill. App. Ct. 1979) (state's attorney can file motion to nol-pros where complaining witness cannot identify defendant at trial); 55 ILCS 5/3-9005 (a)(1) (it is the duty of the state's attorney to prosecute criminal proceedings). Moreover, given that individuals who have initiated a lawsuit do not have an affirmative duty to come forward with exculpatory evidence after the prosecutor has assumed control, it would be anomalous to require such disclosure from witnesses with no role in commencing the legal action. *See Geisberger v. Vella*, 379 N.E.2d 947, 944 (Ill. App. Ct. 1978) (rejecting the theory that civilian defendants continued a criminal action by not going to the prosecutor with exculpatory information after the police filed charges). Having found no dispute of material fact on relevant issues, the Court grants summary judgment in favor of Stepich and Bruno on Count III.

## CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment are DENIED as to Count I, GRANTED as to Count II, and GRANTED in part and DENIED in part as to Count III. The Court grants summary judgment on the malicious prosecution claim against Nguyen, Stepich, and Bruno, and denies it with respect to Fenimore.

Enter:

/s/ David H. Coar

---
David H. Coar
United States District Judge

Dated: **April 13, 2010**